Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 190731-15574
DATE: July 14, 2021

ORDER

Entitlement to service connection for bilateral hearing loss is denied. 

Entitlement to a compensable evaluation for ilio-inguinal nerve radiculopathy of the left lower extremity is denied.

Entitlement to an evaluation higher than 10 percent for anterior crural and internal saphenous nerves radiculopathy of the left lower extremity is denied.

Entitlement to a compensable evaluation for obturator nerve radiculopathy of the left lower extremity is denied.

Entitlement to a higher evaluation than 20 percent for posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity is denied.

Entitlement to a compensable evaluation for external cutaneous nerve radiculopathy of the left lower extremity is denied.

Entitlement to a higher evaluation than 10 percent for flexion of the Veteran's left knee arthritis is denied.

Entitlement to a 10 percent evaluation for limitation of extension of the Veteran's left knee arthritis is granted.

The Regional Office (RO) should restore Codes 5260-5010 for Left Knee Degenerative Arthritis, Status-Post Arthroscopies reflected in the August 2020 Code sheet which notes that the Veteran has a 10 percent rating (these codes were deleted when the RO implemented the September 2020 Board decision which granted a rating of 20 percent under DC 5257 and granted a separate 20 percent rating under DC 5258).

FINDINGS OF FACT

1. The preponderance of the evidence of record is against finding that the Veteran has had a hearing loss disability at any time during or approximate to the pendency of the claim.

2. The Veteran's ilio-inguinal nerve radiculopathy of the left lower extremity is manifested by mild incomplete paralysis.

3. The Veteran's anterior crural and internal saphenous nerves radiculopathy of the left lower extremity is manifested by mild incomplete paralysis.

4. The Veteran's obturator nerve radiculopathy of the left lower extremity radiculopathy is manifested by mild incomplete paralysis.

5. The Veteran's posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity is manifested by mild incomplete paralysis.

6. The Veteran's external cutaneous nerve of the left lower extremity radiculopathy is manifested by mild incomplete paralysis. 

7. The Veteran's left knee disability is manifested by flexion to 45 degree with pain beginning at 45 degrees.

8. The Veteran's left knee disability is manifested by extension to 10 degrees. 

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for a compensable evaluation for ilio-inguinal nerve radiculopathy of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8530.

3. The criteria for a rating in excess of 10 percent for anterior crural and internal saphenous nerves radiculopathy of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Codes 8526, 8527.

4. The criteria for a compensable evaluation for obturator nerve radiculopathy of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8528.

5. The criteria for a rating in excess of 20 percent for posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Codes 8520, 8525, 8521, 8522, 8523, and 8524.

6. The criteria for a compensable evaluation for external cutaneous nerve radiculopathy of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8529.

7. The criteria for a rating in excess of 10 percent for limitation of flexion due to left knee arthritis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Codes 5010, 5260.

8. The criteria for a rating of 10 percent, but no higher, for limitation of extension due to left knee arthritis have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5261.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active military service from July 2003 to October 2010.

The Veteran's claim for the above issues was received on May 14, 2019.

The rating decision on appeal was issued in June 2019 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. 

In the July 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket.

Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

The issues of higher ratings for the back disability and left knee meniscus tear were adjudicated by the Board in a separate decision dated in September 2020.

SERVICE CONNECTION

1. Service connection for bilateral hearing loss is denied.

The Veteran contends that his hearing loss is due to service. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

Favorable findings identified by the RO include that the Veteran was exposed to noise during service as his Military Occupational Specialty (MOS) was SF Weapons Sergeant and Indirect Fire Infantryman. The RO also noted that hearing loss is a chronic disease which may be presumptively linked to your military service. The RO also noted that the Veteran had sufficient service to meet the minimum requirements for presumptive service connection.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have a current diagnosis of bilateral hearing loss and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

The June 2019 VA examiner evaluated the Veteran and determined that, while he experienced subjective symptoms of hearing loss, he did not have a diagnosis of bilateral hearing loss for VA rating purposes. 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.

June 2019 HERTZ

 500 1000 2000 3000 4000 CNC

RIGHT 5 5 5 0 0 100 %

LEFT 10 10 10 5 10 100 %

Here, the Veteran does not have auditory thresholds in any of the frequencies of 40 decibels or greater or 26 decibels or greater. See June 2019 VA examination. The Veteran's CNC scores were not less than 94 percent. Id.

The Board acknowledges that the Veteran's private chiropractor, K.C., tested the Veteran's hearing using a turning fork and diagnosed the Veteran with probable hearing loss in both ears. The chiropractor referred the Veteran to seek further audiologic testing. The chiropractor opined that it was as likely as not that the hearing loss was directly and causally related to his military service. See April 2019 private treatment report. Following this examination, the Veteran received the above reference June 2019 Hearing Loss Disability Benefits Questionnaire. The Board affords the April 2019 chiropractor's findings little probative value. The chiropractor did not conduct an audiologic examination on the Veteran or test a speech discrimination pursuant to the Maryland CNC Test, which is required under 38 C.F.R. § 3.385. 

While the Veteran believes he has a current diagnosis of bilateral hearing loss, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

INCREASED RATING

There are five nerve branches in the lower extremities. Each branch has its separate and distinct functions. The sciatic branch includes the sciatic nerve, external popliteal nerve (common peroneal), musculocutaneous (superficial peroneal), anterior tibial nerve (deep peroneal), internal popliteal (tibial), and posterior tibial nerves. The femoral branch includes the anterior crural (femoral) and the internal saphenous nerves. The obturator, external cutaneous thigh, and ilio-inguinal nerve branches only include one nerve each.

2. Entitlement to a compensable evaluation for ilio-inguinal nerve of the left lower extremity from May 14, 2019 to June 25, 2019

The Veteran contends that he is entitled to a compensable rating for his left lower extremity radiculopathy. 

Paralysis of the ilio-inguinal nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8530. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8630 and 8730). Under these criteria, mild to moderate paralysis is rated as noncompensable. Moderate to complete paralysis is rated as 10 percent disabling. 38 C.F.R. § 4.124a. 

The words "mild," "moderate," and "severe" as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at "Diseases of the Peripheral Nerves." The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The June 2019 examiner opined that the Veteran had mild constant pain of the left lower extremity. He had mild paresthesias and dysesthesias. He also had mild numbness. He had normal muscle strength and normal findings on reflex testing. The light touch sensation testing showed all normal findings. He had normal trophic changes and a normal gait. There was no atrophy found. Testing of the ilio-inguinal nerve showed mild incomplete paralysis.

Based on the above, the Board finds that the disability is primarily manifest by pain, numbness, and mild incomplete paralysis. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by severe to complete paralysis. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis. 

The Board acknowledges the Veteran's chiropractor found that the Veteran's left lower extremity disability was manifested by pain, weakness, and atrophy. See April 2019 letter from Dr. K.C. (submitted with the Veteran's claim). The Veteran had weakness and diminished reflexes and atrophy of the left thigh (left thigh was 2 centimeters smaller diameter). The Board finds the June 2019 examination to be more probative and more thorough as the examiner tested each nerve and provided symptomatology for each nerve. 

For these reasons, the Board finds that a compensable evaluation is not warranted for the Veteran's mild incomplete paralysis of his ilio-inguinal nerve of the left lower extremity.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran's claim for a compensable rating. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

3. Entitlement to a higher evaluation than 10 percent for anterior crural and internal saphenous nerves of the left lower extremity from May 14, 2019 to June 25, 2019

The Veteran contends that he is entitled to a higher rating for his left lower extremity. 

The RO assigned a 10 percent evaluation based on findings of mild incomplete paralysis.

Paralysis of the anterior crural and internal saphenous nerves of the left lower extremity is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8526 and 8527. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8626, 8726, 8627, and 8727). Under these criteria, mild incomplete paralysis is rated as 10 percent disabling. Moderate incomplete paralysis is rated as 20 percent disabling. Severe incomplete paralysis is rated as 30 percent disabling. Complete paralysis of the quadriceps extensor muscles is rated at 40 percent disabling. 38 C.F.R. § 4.124a. 

The words "mild," "moderate," and "severe" as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at "Diseases of the Peripheral Nerves." The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The June 2019 examiner opined that the Veteran had mild constant pain of the left lower extremity. He had mild paresthesias and dysesthesias. He also had mild numbness. He had normal muscle strength and normal findings on reflex testing. The light touch sensation testing showed all normal findings. He had normal trophic changes and a normal gait. There was no atrophy found. Testing of the anterior crural and internal saphenous nerves showed mild incomplete paralysis for each of these nerves.

Based on the above, the Board finds that the disability is primarily manifest by pain, numbness, and mild incomplete paralysis. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by severe to complete paralysis. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis. The Veteran is already rated at a 10 percent disability rating.

The Board acknowledges the Veteran's chiropractor found that the Veteran's left lower extremity disability was manifested by pain, weakness, and atrophy. See April 2019 letter from Dr. K.C. (submitted with the Veteran's claim). The Veteran had weakness and diminished reflexes and atrophy of the left thigh (left thigh was 2 centimeters smaller diameter). The Board finds the June 2019 examination to be more probative and more thorough as the examiner tested each nerve and provided symptomatology and severity of each nerve.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

For these reasons, the Board finds that a rating higher than 10 percent is not warranted for the Veteran's mild incomplete paralysis of his anterior crural and internal saphenous nerves of the left lower extremity.

4. Entitlement to a compensable evaluation for obturator nerve of the left lower extremity from May 14, 2019 to June 25, 2019

The Veteran contends that he is entitled to a compensable rating for his left lower extremity.

Paralysis of the obturator nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8528. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes DC 8628 and DC 8728). Under these criteria, mild to moderate paralysis is rated as noncompensable. Moderate to complete paralysis is rated as 10 percent disabling. 38 C.F.R. § 4.124a. 

The words "mild," "moderate," and "severe" as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at "Diseases of the Peripheral Nerves." The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The June 2019 examiner opined that the Veteran had mild constant pain of the left lower extremity. He had mild paresthesias and dysesthesias. He also had mild numbness. He had normal muscle strength and normal findings on reflex testing. The light touch sensation testing showed all normal findings. He had normal trophic changes and a normal gait. There was no atrophy found. Testing of the obturator nerve showed mild incomplete paralysis.

Based on the above, the Board finds that the disability is primarily manifest by pain, numbness, and mild incomplete paralysis. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by severe to complete paralysis. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis. 

The Board acknowledges the Veteran's chiropractor found that the Veteran's left lower extremity disability was manifested by pain, weakness, and atrophy. See April 2019 letter from Dr. K.C. (submitted with the Veteran's claim). The Veteran had weakness and diminished reflexes and atrophy of the left thigh (left thigh was 2 centimeters smaller diameter). The Board finds the June 2019 examination to be more probative and more thorough as the examiner tested each nerve and provided symptomatology for each nerve.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

For these reasons, the Board finds that a compensable evaluation is not warranted for the Veteran's mild incomplete paralysis of his obturator nerve of the left lower extremity.

5. Entitlement to a higher evaluation than 20 percent for posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity from May 14, 2019 to June 25, 2019

The Veteran contends that he is entitled to a higher rating for his left lower extremity.

The RO granted a 20 percent for posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity due to moderate incomplete paralysis. See June 2019 RO decision.

The sciatic branch includes the sciatic nerve, external popliteal nerve (common peroneal), musculocutaneous (superficial peroneal), anterior tibial nerve (deep peroneal), internal popliteal (tibial), and posterior tibial nerves. 

Paralysis of the sciatic nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8520. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8620 and 8720). Under these criteria, mild incomplete paralysis is rated as 10 percent disabling. Moderate incomplete paralysis is rated as 20 percent disabling. Moderately severe incomplete paralysis is rated as 40 percent disabling. Severe incomplete paralysis, with marked muscular atrophy is rated as 60 percent disabling. Complete paralysis, with the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost is rated as 80 percent disabling. 38 C.F.R. § 4.124a. 

The words "mild," "moderate," and "severe" as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at "Diseases of the Peripheral Nerves." The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The maximum rating which may be assigned for neuritis not characterized by organic changes will be moderately severe incomplete paralysis for sciatic nerve involvement. See 38 C.F.R. § 4.123. 

The June 2019 examiner opined that the Veteran had mild constant pain of the left lower extremity. He had mild paresthesias and dysesthesias. He also had mild numbness. He had normal muscle strength and normal findings on reflex testing. The light touch sensation testing showed all normal findings. He had normal trophic changes and a normal gait. There was no atrophy found. Testing of the sciatic nerve, posterior tibial, external poplitea, musculocutaneous, anterior tibial, and internal popliteal of the left lower extremity showed mild incomplete paralysis which warrants a 10 percent evaluation. The Board acknowledges that the Veteran is already assigned a 20 percent evaluation for this branch of nerves. The Board finds that the June 2019 examination did not show sustained improvement. Therefore, the Board will continue the 20 percent evaluation.

Based on the above, the Board finds that the disability is primarily manifest by pain, numbness, and mild incomplete paralysis. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by moderately severe to complete paralysis. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis. 

The Board acknowledges the Veteran's chiropractor found that the Veteran's left lower extremity disability was manifested by pain, weakness, and atrophy. See April 2019 letter from Dr. K.C. (submitted with the Veteran's claim). The Veteran had weakness and diminished reflexes and atrophy of the left thigh (left thigh was 2 centimeters smaller diameter). The Board finds the June 2019 examination to be more probative and more thorough as the examiner tested each nerve and provided symptomatology for each nerve.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

For these reasons, the Board finds that a rating higher than 20 percent is not warranted for the Veteran's posterior tibial, external popliteal, musculocutaneous, anterior tibial, internal popliteal and sciatic nerves of the left lower extremity.

6. Entitlement to a compensable evaluation for external cutaneous nerve of the thigh of the left lower extremity from May 14, 2019 to June 25, 2019

The Veteran contends that he is entitled to a compensable rating for his left lower extremity radiculopathy. 

Paralysis of the external cutaneous nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8529. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8629 and DC 8729). Under these criteria, mild to moderate paralysis is rated as noncompensable. Moderate to complete paralysis is rated as 10 percent disabling. 38 C.F.R. § 4.124a. 

The words "mild," "moderate," and "severe" as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at "Diseases of the Peripheral Nerves." The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The June 2019 examiner opined that the Veteran had mild constant pain of the left lower extremity. He had mild paresthesias and dysesthesias. He also had mild numbness. He had normal muscle strength and normal findings on reflex testing. The light touch sensation testing showed all normal findings. He had normal trophic changes and a normal gait. There was no atrophy found. Testing of the external cutaneous nerve of the thigh showed mild incomplete paralysis.

Based on the above, the Board finds that the disability is primarily manifest by pain, numbness, and mild incomplete paralysis. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by severe to complete paralysis. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis. 

The Board acknowledges the Veteran's chiropractor found that the Veteran's left lower extremity disability was manifested by pain, weakness, and atrophy. See April 2019 letter from Dr. K.C. (submitted with the Veteran's claim). The Veteran had weakness and diminished reflexes and atrophy of the left thigh (left thigh was 2 centimeters smaller diameter). The Board finds the June 2019 examination to be more probative and more thorough as the examiner tested each nerve and provided symptomatology for each nerve.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

For these reasons, the Board finds that a compensable evaluation is not warranted for the Veteran's mild incomplete paralysis of his external cutaneous nerve of the left lower extremity.

7. Entitlement to a higher evaluation than 10 percent for flexion of the Veteran's left knee arthritis from May 14, 2019 to June 25, 2019

8. Entitlement to a 10 percent evaluation for limitation of extension of the Veteran's left knee arthritis from May 14, 2019 to June 25, 2019

The August 2020 Code sheet reflects that the Veteran was assigned a 10 percent evaluation for left knee arthritis under DCs 5010-5260. In a September 2020 decision, the Board granted a 20 percent evaluation for left knee meniscus tear under DC 5257. The Board also granted a separate evaluation for the meniscus under DC 5258. When implementing the Board's September 2020 decision, the RO appears to have deleted the Veteran's left knee arthritis code of 5010-5260. Instead, the RO assigned a new code of 5258 to the Veteran's "Left knee degenerative arthritis, status post arthroscopies". When assigning the new code, the RO also noted a 20 percent evaluation under DC 5258. The Board will proceed as if the Veteran is assigned a 10 percent evaluation under DC 5010-5260 for flexion as reflected in the August 2020 Code sheet. 

As noted above, the Board has already adjudicated the Veteran's instability of the left knee and meniscus tear under DC 5257 and 5258 in a September 2020 decision. The Board will now consider if the Veteran's left knee arthritis disability warrants an increase under the remaining diagnostic codes.

The Veteran contends that he is entitled to a higher rating for his left knee disability. 

The Veteran was assigned a 10 percent evaluation for painful range of motion and joint line tenderness in an RO May 2011 decision for left knee residuals post arthroscopic surgeries with early arthritis and assigned a 10 percent evaluation under DC 5260. Later in April 2017, the Veteran's left knee degenerative arthritis was assigned a more accurate diagnostic codes of 5010-5260 as the Veteran was granted a 10 percent based on x-ray evidence of traumatic arthritis and flexion was not to 30 degrees or less.

Under Diagnostic Code 5260, a noncompensable rating is warranted for flexion limited to 60 degrees. A 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) ("[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran's disability, after which a rating is determined based on the § 4.71a criteria.").

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

In Correia v. McDonald, 28 Vet. App. 158 (2016), the Court held that the final sentence of 38 C.F.R. § 4.59 requires that the examiner record the results of range of motion testing "for pain on both active and passive motion [and] in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint." The spine has no opposite joint.

In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that VA examiners must obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves, when a flare-up is not observable at the time of examination.

Here, the Veteran did not report flare-ups of the left knee during the June 2019 examination. The examiner found no objective evidence of pain when the joint was used in non-weight bearing and weight bearing. The examiner also found no objective evidence of pain on passive range of motion testing.

In May 2019, the Veteran submitted an April 2019 letter from his private chiropractor. The chiropractor noted that the Veteran had severe pain of the left knee which is constant in varying degrees and intensified with sitting, walking, standing, stairs, transition to other positions, and arising from a seated position, and weight-bearing in general. On examination, flexion was to 45 degrees and extension to 10 degrees.

The Veteran was provided a Knee Disability Benefits Questionnaire in June 2019. The examiner diagnosed the Veteran with arthritis of the left knee. The Veteran reported left knee pain that had increased over the last 18 months. He reported that he is unable to walk or stand for long periods of time without difficulty. Flexion was to 100 degrees and extension was to 0 degrees. Pain caused functional loss on examination.

The Board finds that the preponderance of the evidence is against a rating in excess of 10 percent for left knee disability for limitation of flexion. Although the Veteran's private chiropractor found that the Veteran's left knee flexion was limited to 45 degrees. Limitation to 45 degrees warrants a 10 percent evaluation. The Veteran is already assigned a 10 percent evaluation under Diagnostic Codes 5010-5260 for arthritis of his left knee. The Board acknowledges the Veteran's lay reports of symptoms and that there was functional loss due to pain. However, even considering the Veteran's lay reports of symptoms and noted functional loss, the evidence does not show limitation of motion more nearly approximating flexion limited to 30 degrees. 

The Board has also considered the other Diagnostic Codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment). 

The Board also finds that a separate disability rating of 10 percent is warranted for limitation of extension based on the findings of the Veteran's chiropractor's April 2019 letter.

As noted above, the Board has already assigned a 20 percent evaluation under DC 5257 and a separate 20 percent evaluation under DC 5258 for the Veteran's left knee. In the September 2020 decision, the Board considered the Veteran's reports of instability, locking and frequent joint pain, functional loss resulting in difficulty with prolonged sitting, standing, walking, climbing stairs, knee popping and clicking and giving out. 

The Board has not found any other evidence which would warrant separate ratings under any other diagnostic code for the knee and leg. See 38 C.F.R. § 4.71a, Diagnostic Codes 5256, 5259, 5262, 5263.

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran's claim for a rating in excess of 10 percent for left knee flexion. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

(Continued on the next page)

 

In addition, the Board finds that a 10 percent is warranted for left knee extension under DC 5261.

 

 

KRISTI L. GUNN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Tahirih S. Samadani, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.